Citation Nr: 1532765 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 07-14 465 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to service connection for a thoracolumbar spine disorder.


REPRESENTATION

Veteran is represented by: Eric Gang, Attorney


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

C. Banister, Associate Counsel 


INTRODUCTION

The Veteran served on active duty from November 1982 to May 1985. This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2007 rating decision rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida


FINDINGS OF FACT

1. The record does not contain credible evidence of an in-service event or injury.

2. A thoracolumbar spine disorder is not shown to be related to the Veteran's active military service.


CONCLUSION OF LAW

A thoracolumbar spine disorder was not incurred in or aggravated by the Veteran's active military service. 38 U.S.C.A. §§ 1131, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

In September 2005, the Veteran filed a claim of entitlement to service connection for a thoracolumbar spine disorder, which he contends is due to an alleged in-service injury that occurred at MacDill Air Force Base in December 1984. The Veteran's claim was denied in a May 2006 rating decision, and the Veteran perfected an appeal. In February 2009, the Board denied the Veteran's service connection claim, and the Veteran appealed that decision to the Court of Appeals for Veteran's Claims (Court). In November 2009, the Court vacated the Board's February 2009 denial of service connection for a thoracolumbar spine disorder and granted a Joint Motion for Remand (Joint Motion), wherein the parties agreed that the Board failed to adequately discuss a journal entry submitted by the Veteran and failed to assess the credibility of the Veteran's account of his alleged in-service injury. The parties further agreed that the "record contains evidence that [the Veteran's] service medical records (SMRs) may be unavailable," and on remand, the Board should clarify whether the Veteran's service treatment records are available, and if not, whether VA's heightened duty to assist has been complied with. Subsequently, the Veteran's claim was returned to the Board for review.

In June 2010, the Board remanded the Veteran's claim in order to obtain updated VA treatment records and provide the Veteran with a VA examination. While in remand status, the RO obtained the Veteran's VA treatment records and provided the Veteran a VA examination in October 2010.

In May 2011, the Board again remanded the above-captioned claim in order to obtain a supplemental opinion addressing the Veteran's post-service back injuries and to make another attempt to obtain treatment records from the MacDill Air Force Base pertaining to an alleged in-service back injury for the period of January 1984 to December 1984. In August 2011, the RO requested all records from the MacDill Air Force Base Hospital. An August 2011 correspondence from MacDill Air Force Base indicates that it found no additional records for the Veteran. In May 2012, the RO requested that the National Personnel Records Center (NPRC) attempt to locate any additional treatment records from MacDill Air Force Base from January 1984 through May 1984. In a May 2012 correspondence, the NPRC indicated that treatment records from 1983 were furnished to the RO, but no additional treatment records from 1984 were located. A note in the Veteran's electronic claims file indicates that the service treatment records previously received included MacDill Air Force Base hospital records from 1984. The RO obtained an addendum opinion in August 2012 and subsequently confirmed the denial of the Veteran's service connection claim. 

In April 2013, the Board again remanded the above-captioned claim and directed the RO to request treatment records from MacDill Air Force Base hospital dated December 1984 through May 1985 and to obtain an addendum opinion in which the examiner discussed a journal entry submitted by the Veteran and the Veteran's post-service back injuries. In October 2013, the RO requested from the NPRC treatment records from MacDill Air Force Base dated December 1984 through May 1985. In a December 2013 correspondence, the NPRC indicated that after an investigation, it determined that all available treatment records for the requested time period were already submitted to the RO. Thereafter, the RO obtained medical opinions in June 2014, August 2014, and January 2015. Based on the foregoing, the Board finds that there has been substantial compliance with the Board's June 2010, May 2011, and April 2013 remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

VA has a duty to notify and assist veterans in substantiating claims for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.3216(a) (2014).

Proper notice from VA must inform the veteran of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the veteran is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The notice requirements apply to all five elements of a service connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the appellant's service and the disability; (4) degree of disability; and (5) effective date of the disability. 38 U.S.C.A. § 5103(a); 38 C.F.R. 3.159(b); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486.

Prior to the initial adjudication of the Veteran's above-captioned claim, the RO's November 2005 letter to the Veteran contained the requisite notice. Id. Further, the purpose behind the notice requirement has been satisfied because the Veteran has been afforded a meaningful opportunity to participate effectively in the processing of his claim, including the opportunity to present pertinent evidence. See Pelegrini, 18 Vet. App. at 120.

In addition, the duty to assist the Veteran has been satisfied in this case. The RO obtained all of the Veteran's available service treatment records and all available records from post-service treatment providers, with the exception of one physician, J. A., M.D. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. In an April 2006 letter, the RO informed the Veteran that it requested records from his private treatment providers, but noted that it was ultimately the Veteran's responsibility to ensure that VA received any private medical evidence the Veteran wished to submit. In a November 2006 statement of the case, the Veteran was advised that the RO was unable to obtain records from Dr. A. Although the record contains several years of treatment records from Dr. A., which were received from the Social Security Administration, the Veteran did not submit any additional records. See Hayes v. Brown, 5 Vet. App. 60, 68 (1993) (noting that VA's duty to assist is not a one-way street; if a veteran wishes help, he or she cannot passively wait for it in those circumstances where his or her own actions are essential in obtaining the putative evidence). Thus, the Board finds that VA has satisfied its duty to assist with respect to obtaining the Veteran's private treatment records. 

The Board notes the November 2009 Joint Motion indicated that the Veteran reported receiving treatment for a back injury at the MacDill Air Force Base hospital in 1984. Because the Veteran's service treatment records showed no treatment for an in-service back injury, the parties to the Joint Motion noted that "the record contains evidence that [the Veteran's] service medical records (SMRs) may be unavailable." However, a review of the Veteran's electronic claims file reveals 111 pages of service treatment records dated November 1982 through May 1985, which encompasses the entire length of the Veteran's military service. This includes records of treatment at MacDill Air Force Base hospital and primary care clinic from 1983 through 1985, which encompasses the entire period before, during, and after the alleged in-service back injury. Furthermore, as noted above, the RO has requested records from the NPRC and directly from MacDill Air Force Base hospital on several occasions, and both sources were unable to locate any additional treatment records. Moreover, as will be discussed in great detail herein, the Board does not find the Veteran's statements or the purported office journal entry to be credible evidence of in-service treatment for a back injury at MacDill Air Force Base. Thus, there is no indication in the record that VA has not obtained the Veteran's complete service treatment records or that additional evidence relevant to the issue being decided herein is available and not part of the record. See Pelegrini, 18 Vet. App. at 116. Accordingly, the Board finds that VA has satisfied its duty to assist with respect to the Veteran's service treatment records. 

The Veteran was provided VA examinations in October 1010 and June 2014 with supplemental opinions issued in August 2012, August 2014, and January 2015. In a September 2014 written correspondence, the Veteran's attorney generally "object[ed] to the competency of the VA examiner," and in a March 2015 written statement, the Veteran asserted that an "internal medical doctor is not qualified to give an opinion on matters of orthopedic and chiropractic disorders." However, the Board may presume the competence of a VA examiner unless a specific challenge is raised as to the examiner's competency. See Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011). Neither the Veteran nor his attorney have advanced any arguments as to how the VA examiners lacked the education, training, or experience necessary to offer a medical diagnosis, statement, or opinion regarding the Veteran's thoracolumbar spine disorder. See, e.g. 38 C.F.R. § 3.159(a)(2) ("Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions"). Notably, the Veteran himself submitted opinions from a VA internist and a primary care provider in support of his service connection claim for a thoracolumbar spine disorder. Accordingly, there is no evidence that any of the VA examiners were not competent to render the requested opinions. 

The Veteran also asserts that the examiners' opinions are inadequate because the Board already found that the Veteran's alleged in-service injury occurred, and therefore, all of the VA examiners had to accept the Veteran's version of events with respect to the alleged in-service back injury. However, in the June 2010 remand, the Board only determined that for purposes of providing a VA examination, and "presuming arguendo, the validity of [the journal entry]," the record contained evidence that the Veteran sustained an in-service back injury. The Board made no findings of fact with regard to the validity of the journal entry or the credibility of the Veteran's statements. See Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (holding that "that the Board is entitled independently to assess the quality of evidence before it"). Moreover, a review of the VA examination reports reveals that the VA examiners neither ignored the Veteran's lay statements regarding the alleged in-service injury, nor based their opinions solely on the lack of documentation of an in-service injury. See Dalton v. Nicholson, 21 Vet. App. 23, 39 (2007) (finding a medical examination inadequate where the examiner "impermissibly ignored the veteran's lay assertions that he had sustained a back injury during service"). To the contrary, the examiners considered the Veteran's statements and provided opinions based on, among other things, whether the Veteran's version of events was consistent with the medical evidence of record. Although the June 2014 VA examiner was unable to provide the requested opinion without resorting to mere speculation, the examiner explained why the requested opinion would require speculation, namely that there was no way of knowing the nature of the Veteran's alleged in-service injury because there was no record of said injury or any subsequent treatment prior to the Veteran's two post-service back injuries. See Jones v. Shinseki, 23 Vet. App. 382 (2010) (holding that a VA examination is not inadequate merely because the medical examiner is unable to reach a conclusion without resorting to speculation, provided that the examiner explains the reasons why an opinion would require speculation). As the examiners reviewed the relevant evidence of record, considered the Veteran's statements, administered thorough clinical evaluations, and when possible, rendered opinions addressing all of the salient questions presented by the Veteran's service connection claim, the Board finds that the Veteran has received an adequate VA examination for evaluation purposes. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this claim, the Board finds that any such failure is harmless. See Mayfield, 20 Vet. App. at 542-43; see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency and clarifying that the burden of showing that an error is harmful or prejudicial normally falls upon the party attacking the agency's determination); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974)("[N]o error can be predicated on insufficiency of notice since its purpose had been served."). 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303. Service connection may also be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease was incurred during service. 38 U.S.C.A. § 1113(b); 38 C.F.R. § 3.303(d); Cosman v. Principi, 3 Vet. App. 503, 505 (1992). 

In order to establish direct service connection for a disability, there must be: (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of a disease contracted, an injury suffered, or an event witnessed or experienced in active service; and (3) competent evidence of a nexus or connection between the disease, injury, or event in service and the current disability. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); see Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Pond v. West, 12 Vet. App. 341, 346 (1999).

The evidence of record includes current diagnoses of thoracic and lumbar spondylosis and degenerative disc disease. See Degmetich v. Brown, 104 F.3d 1328, 1333 (Fed. Cir. 1997) (holding that the existence of a current disability is the cornerstone of a claim for VA disability compensation). 

With respect to an in-service event or injury, the Veteran asserts that he injured his lower back during service while working as a jet engine mechanic at MacDill Air Force Base. Specifically, the Veteran asserts that in December 1984, a tool weighing approximately 60 pounds fell on his back, causing him to be transported via ambulance to the MacDill Air Force Base hospital, where he stayed overnight and received follow-up care on several occasions thereafter. The Veteran's statements are competent evidence as to factual matters of which he has first-hand knowledge. See Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). However, the Board must also ascertain whether his statements are credible. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995) (holding that in weighing credibility, VA may consider inconsistent statements, internal inconsistency, and consistency with other evidence of record). 

The Board has a duty to "analyze the credibility and probative value of evidence . . . when making its factual findings." Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (citing Miller v. Derwinski, 3 Vet.App. 201, 204 (1992) (the Board must assess credibility and weight of lay testimony); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992) (when physician accepts veteran's descriptions as credible and renders diagnosis thereon, Board has duty to assess credibility and weight to be given to the evidence), appeal dismissed, 996 F.2d 1236 (Fed. Cir.1993) (unpublished table decision); Sanden v. Derwinski, 2 Vet.App. 97, 100 (1992) (Board's task includes determining credibility of evidence)). For the reasons that will be discussed herein, the Board finds that the Veteran's statements regarding his alleged in-service injury lack credibility.

Notwithstanding the fact that VA has obtained treatment records from MacDill Air Force Base hospital, including the primary care clinic, dated 1983 through 1985, the Veteran's service treatment records are silent for complaints of or treatment for any back injuries.

Private orthopedic treatment records dated April 1991 through July 1994 show treatment for various orthopedic conditions; however, there are no complaints of or treatment for back pain or any references to a prior back injury. In August 1994, the Veteran reported waking up the day before with back pain, which he attributed to sleeping on his couch. The Veteran reported sleeping on his couch for quite some time in order to elevate his injured ankle. 

A September 1994 private treatment record indicates that the Veteran stated that he believed he was compensating for his foot problem, which aggravated his back. 

In October 1994, the Veteran underwent an independent medical evaluation conducted pursuant to a Workers' Compensation claim for an ankle and low back injury. The Veteran reported slipping on a pipe and injuring his ankle in December 1992. Thereafter, he reported intermittent lower back pain since August 1994. A physical examination revealed very minimal to mild tenderness of the lumbosacral junction and full range of extension and flexion. The examiner did not believe that the Veteran's back problems were directly related to his ankle problems and opined that the Veteran's back pain was caused by sleeping on a couch, which was unsuitable for proper back mechanics.

In January 2005, the Veteran reported sleeping in a regular bed and noted that his back felt somewhat better. The treatment provider indicated that thoracolumbar spine range of motion appeared satisfactory with no evidence of pain.

A January 1995 private treatment record shows that the Veteran complained of lower back pain. He reported injuring his left ankle in December 1992 when he slipped on a pipe while working as a skycap at an airport. After the Veteran underwent surgical procedures for ankle injuries in March 1993, he reported lying on his sofa as a method of elevating his foot and getting appropriate relief of swelling. The record indicates that he developed a lumbosacral strain in August 1994 from the abnormal positioning. X-rays of the spine revealed no fractures, dislocations, or subluxations. 

A July 1996 private treatment record shows that the Veteran reported a history of back disease, injury, pain and disc herniation at L5-S1. The Veteran indicated that the initial injury occurred in 1992.

A January 1998 private treatment record indicates that x-rays performed in August 1997 showed minimally degenerative changes affecting L5-S1 with facet joint arthropathy.

A July 1999 private treatment record shows that the Veteran reported continued lower back pain since 1992.

In August 1999, the Veteran reported injuring his lower back in December 1993 after he slipped on a pipe while working at the Daytona Beach Airport. The Veteran stated that since that time, he experienced significant difficulties with lower back pain and radiculopathy. He denied sustaining any other trauma to his lower back.

In December 1999, Veteran reported initially injuring his lower back after he slipped on a pipe while working at an airport in December 1992. He reported falling to the ground and injuring ligaments in his left ankle. The Veteran stated that after two ankle surgeries in March 1993, he started experiencing lower back pain initially from the slip and fall, which gradually intensified.

A December 1999 private treatment record shows that the Veteran complained of lower back pain resulting from a prior injury, which worsened after sustaining a second injury while working as a bus driver. The Veteran stated that the seat or the shock absorbing mechanism of the bus seat was not working properly, causing him to be thrown from his seat. 

X-rays of the thoracic spine performed in January 2000 were unremarkable.

A January 2001 private treatment record indicates that the Veteran was referred for chronic lower back pain. The treatment provider noted that the Veteran "had quite a few things happen in the past," and that "his history is complicated regarding his back injuries." The Veteran reported that he broke his ankle while working in 1993, and he later found out the following year that the incident involved his back as well. The Veteran stated that he was scheduled to undergo a discectomy, but did not end up having the surgery because he lost his insurance coverage. He reported experiencing lower back pain ever since. The Veteran reported another injury in 1999 while driving a bus with inadequate seats, which caused him to be "jolted quite a bit during the ride." 

Another January 2001 private treatment record shows that the Veteran complained of persistent lower back pain, which was secondary to a fall in 1994.

In September 2005, the Veteran submitted an Application for Compensation and/or Pension (VA Form 21-526) in which he sought service connection for an upper and lower back condition. The Veteran did not fill out the portions of the form in which he was asked to identify when his disability began and when he was treated. When asked what medical facility or doctor treated him, the Veteran directed VA to see his service medical records. When asked to explain how the claimed disability was related to service, the Veteran wrote "receiving Social Security disability benefits."

A September 2005 VA treatment record indicates that the Veteran sought treatment in order to establish care from the VA. During the initial visit, the Veteran reported a history of chronic lower back pain since the early 1990s. 

In January 2006, the Veteran submitted a written statement in which he asserted that he injured his back during service when a tool used to separate sections of a jet engine came lose and fell on his lower back. He stated that he was taken by ambulance to the base hospital where he stayed overnight and was released. The Veteran further stated that he was off work for one week and received follow-up outpatient treatment from an Air Force base physician on several occasions. He stated that "this took place during 1982 to 1985." 

In May 2006, the Veteran's claim of entitlement to service connection for a thoracolumbar spine disorder was denied. In the rating decision and subsequent statements of the case, the RO informed the Veteran that his claim was denied, in part, because there was no documentation of the alleged back injury.

During a December 2008 hearing before the Board, the Veteran testified that in 1984, he was injured during service when a tool weighing approximately 60 pounds came loose from a jet engine and fell on his back. He stated that following the injury, he was treated at the MacDill Air Force Base medical facility where x-rays were taken, and he stayed overnight. He reported missing a few days of work and receiving follow-up treatment at the clinic of the MacDill Air Force Base hospital during the next several weeks. The Veteran noted that it was "quite a heavy tool that could have done considerably more damage . . . [and] they wanted to make sure I was okay." After the accident, he reported continued soreness in his back "for quite some time" and recalled experiencing back problems again in 1988; however, he stated that he did not seek medical treatment. The Veteran then produced a photocopy of two pages from what he claimed was an "office journal" in which employees documented daily work activities and "signed off every night." The Veteran testified that the office journal was given to him when he left service because "it had some good times in it," and "it was just really almost personal." He stated that the front cover, back, and most of the pages were destroyed by water damage in an attic; however, a few pages survived, including a December 13, 1984 entry which purports to show documentation of an in-service back injury. The Veteran testified that he was the only person on duty that night, and that he wrote the journal entry in order to inform his superiors of the reason he left work. The Veteran also testified that he told his post-service treatment providers that his back injury occurred in 1992 because the in-service injury occurred so long ago that he forgot about it. The Veteran stated that he did not remember the in-service injury until 2005, when he spoke to a VA physician during intake. Specifically, the Veteran recalled the VA physician asking him if he ever sustained a more serious injury because the two post-service injuries were not consistent with the severity of the degeneration process in his back. The Veteran stated that the VA physician's question jogged his memory, and he reported the tool falling on his back during service. He also recalled the VA physician stating that "it all makes sense" in that the initial in-service injury started the chain of events, and his back never healed. 

The purported office journal entry is a handwritten, two-item list. The first item on the list appears to document tasks that were completed, such as "assisted Red pulling eng." At the end of the first note, in smaller handwriting, it says, "tool fell on back went to hosp." This note appears to be squeezed in among writing that is otherwise relatively spaced out. The second item on the list then appears to document more tasks completed that day. The end of the note says "have a nice day," contains a smiley face, and is signed. 

The Board does not find the Veteran's statements regarding the alleged in-service injury to be credible for several reasons. First, the Board finds it unlikely that the Veteran simply forgot about his in-service back injury until 2005. The Veteran testified that he was struck in the back by "quite a heavy tool" weighing approximately 60 pounds; was transported to the hospital via ambulance, where he was admitted overnight and had x-rays taken; missed several days of work; received follow-up care for several weeks; and experienced pain "for quite some time" thereafter. However, the Veteran provided detailed descriptions of the history of his back pain to multiple treatment providers over the course of several years, yet he never mentioned the alleged in-service injury. The Board is not convinced by the Veteran's testimony that he simply forgot about a back injury that required transportation via ambulance, an overnight hospital admission, several weeks of follow-up care, and continued pain.

Second, the Veteran testified that he remembered the in-service back injury during a 2005 VA intake interview because a physician stated that the Veteran's description of the post-service injuries were not consistent with the severity of the degeneration in his back. However, this is not supported by the evidence of record. The record shows that in September 2005, the Veteran sought to establish treatment with the VA. The record from that visit shows that the Veteran reported a history of chronic lower back pain since the early 1990s. There is no indication in the record that a VA physician advised the Veteran that he appeared to have sustained a more serious injury prior to the two post-service injuries. VA treatment records show that the Veteran did not report the in-service back injury to a VA physician until after his service connection claim was denied. The fact that the Veteran changed his story after it was in his pecuniary interest to do so further diminishes his credibility. See Caluza, 7 Vet. App. at 506 (holding that a pecuniary interest is recognized as a factor which may affect the credibility of a claimant's statements). 

Third, VA obtained treatment records from MacDill Air Force Base, including the primary care clinic, for the entire time period surrounding the alleged in-service injury. However, there is no record of the alleged overnight emergency room admission, x-rays, or multiple follow-up visits. Notably, the record contains three service treatment records from the clinic at MacDill Air Force Base hospital during January 1985. This is the precise time period during which the Veteran claims to have made several visits to the outpatient clinic at MacDill Air Force Base hospital following the alleged December 1984 injury. However, there is no mention of a back injury in any of these treatment records. The Board finds it unlikely that the MacDill Air Force Base hospital and primary care clinic retained the Veteran's treatment records throughout the relevant time period, but lost only those relating to a back injury.

The Board likewise does not find the purported office journal entry to be credible evidence of the Veteran's account of the alleged in-service injury. As an initial matter, the Board is not entirely clear as to what the purported "office journal" is because there is conflicting testimony in this regard, and the front cover, back, and most of the contents therein were apparently destroyed by water damage. Although the Veteran submitted photocopies of the additional surviving pages of the journal, they appear to be illegible. In a written correspondence received in September 2010, the Veteran indicated that the journal was a contemporaneous record kept in the normal course of U.S. Air Force business activities. The Veteran's attorney has argued at great length that this journal entry is inherently reliable and probative because it was a business record kept by personnel during the normal course of regularly-conducted business activity. However, the Board finds it unlikely that the Veteran's employer gave him possession of an official U.S. Air Force business record because, as the Veteran testified, "it had some good times in it." The assertion that the journal is inherently reliable because it was a regularly kept business record is also inconsistent with the Veteran's testimony that the journal was "really just almost personal." Additionally, the journal has been in the Veteran's possession for over 20 years, and there is no evidence of record to corroborate the Veteran's assertion that this journal is, in fact, an authentic business record which has not been altered in any way. Furthermore, the Board is not persuaded by the Veteran's testimony that he wrote the journal entry immediately after the alleged injury. Notably, the portion of the entry that says "tool fell on back went to hosp. will call you AM" is written much smaller than the rest of the journal entry and appears to be squeezed between items one and two on the list, which are otherwise relatively spaced out. Thus, the notation appears to be written after-the-fact. The Board also finds it unlikely that after sustaining a significant back injury which required transportation to the hospital via ambulance and an overnight admission, one would make a notation of the injury in an office journal, continue to document the other activities performed that day, and proceed to sign the note "have a nice day" with a smiley face. Moreover, the Board finds it suspicious that this journal entry was suddenly found after the Veteran's service connection claim was denied due to the lack of documentation of an in-service injury. See Caluza, 7 Vet. App. at 506 (holding that a pecuniary interest is recognized as a factor which may affect the credibility of a claimant's statements). Accordingly, the Board does not find the purported journal entry to be credible evidence of an in-service injury.

The Veteran has submitted several reports from treatment providers and medical professionals who opined that the Veteran's current thoracolumbar disorder is related to service. However, as will be discussed herein, all of these opinions assume the accuracy of the Veteran's statements regarding his alleged in-service injury. Because the Board has found that the Veteran's statements lack credibility, the Board assigns no probative value to the positive nexus opinions submitted by the Veteran. See Reonal v. Brown, 5 Vet. App. 458, 460-61 (1993) (holding that medical opinions based on an inaccurate factual premise are not probative). 

The Veteran submitted an opinion dated May 2010 from R. B., D. C., a private chiropractor who reviewed the Veteran's medical records. Dr. B. indicated that according to a January 2006 written statement, the Veteran reported sustaining a back injury during service when a tool used to separate sections of a jet engine came loose and fell on his back, resulting in the Veteran being transported by ambulance to the hospital, where he was admitted for one night. The Veteran reported being unable to work for one week and receiving outpatient treatment on several occasions. Thereafter, the Veteran reported that his condition progressively worsened, causing him to require ongoing care and being unable to perform daily activities. Dr. B. noted that there was no record of the alleged in-service injury and opined that "this documentation is not available because the records were purged or lost most likely by the military." Dr. B. also referred to a service treatment record indicating that the Veteran complained of low back pain in October 1983. The chiropractor summarized the Veteran's post-service treatment records and provided, in relevant part, the following opinion:

It has been noted that while [the Veteran] was on active duty in the U.S. Air Force a[n] incident occurred which has been previously noted, whereby he sustained injury to his thoracolumbar spine. This incident has been reported as occurring per [the Veteran] and unfortunately it doesn't appear in hospital record which would have noted his admission to the hospital following this injury in question. Unfortunately, these records are not available nor any other records related to this injury. In respect to this injury, I reviewed a document which appears to have been generated from a log kept at the Veteran's duty location. Therefore, as a result of this[,] I assume the accuracy of the reported injury which resulted to [the Veteran] while in the U.S. Air Force.

The service related incident caused the initial injury to [the Veteran's] thoraco-lumbar spine and he sustained exacerbation to this injury in subsequent incidents. After being discharged from the U.S. Air Force, he suffered an injury to his low back and ankle. There has also been discussion that his lumbar pain resulted from lying on a couch and thoracic, rib, chest complaints were related to driving a truck.

In my opinion, it is likely as not that [the Veteran's] thoraco-lumbar subjective complaints and objective findings are a result of having to work in tight cramped spaces over prolonged periods and an object falling onto his spine not as a result of these other incidents which have been mentioned.

In February 2011, the Veteran submitted an addendum opinion, dated January 2011, in which Dr. B. commented on the opinion of the VA examiner who most recently evaluated the Veteran. The chiropractor summarized the VA examiner's October 2010 report and provided, in relevant part, the following opinion:

It is my opinion that [the examiner] clearly did not carefully review [the Veteran's] claims file for if he had actually reviewed the file clearly he would have noted a journal entry which documented the heavy engine tool which fell onto his back and resulted in his being seen at the hospital. This has been clearly addressed in the prior report which I have provided. This injury has been clearly reported in [the Veteran's] medical record and corroborates his back injury and there should be no reason to doubt the veracity of the medical records which clearly document [the Veteran's] in-service injury.

In February 2011, the Veteran submitted a letter dated October 2010 from a VA internal medicine physician, M. M., M. D., in which the physician described the Veteran's in-service back injury, as reported by the Veteran. Dr. M. indicated that after the Veteran injured his back in 1982, he began experiencing thoracic and lumbar back pain. In support of this, Dr. M. referred to military examinations dated 1983 and 1984 in which the Veteran allegedly complained of back pain. Dr. M. summarized the Veteran's post-service treatment for back pain, without any reference to the 1992 or 1999 injuries, and provided the following opinion:

Based on [the Veteran's] current examination, history and MRI findings, it is my medical opinion that his current thoracic and lumbar back pain syndrome is 'at likely as not' related to his initial injury occurring during active military duty in approximately 1982. Subsequent to this injury the [Veteran] began to report chronic back complaints that have been progressive to the current time. The findings of degenerative arthritis and multilevel disk disease generally take years to develop after acute injury or insult. The [Veteran] appears to have a chronological record of pain complaints showing a progressive nature and from several sources dating back to his original injury in 1982.

In July 2011, the Veteran submitted a May 2011 opinion from a VA primary care provider, J. S., D. O. Dr. S. indicated that the Veteran reported a history of back pain from 1982 after a heavy tool hit his lower back while he was working on a jet engine during service. Since that time, the Veteran reported thoracic and lumbar back pain. The physician stated that "military and civilian medical records document evaluation and treatment provided during this time and addressing this complaint." The physician also described the Veteran's current treatment and provided the following etiological opinion:

Based on all the information provided and reviewed for time comparison and correlation along with my clinical examination, I consider that [the Veteran's] thoracic and lumbar back pain is 'as likely as not' related to his injury that occurred in 1982 while on active military duty in the Air Force. His back pain is the result of a service related incident to his thoraco-lumbar spine with exacerbations due to subsequent incidents.

In January 2014, the Veteran submitted a December 2012 opinion from a private orthopedic surgeon, H. D., D.O. In the report, Dr. D. noted that there was no documentation of a jet engine tool falling on the Veteran; however, the journal entry "clearly documented the mechanism of injury to [the Veteran's] spine." Dr. D. also stated that "this specific work-related incident of the toolbox as well as [the Veteran] working continuously in cramped quarters doing a lot of bending, twisting, and heavy lifting has been well documented throughout the course of the many years," and provided the following opinion, in relevant part:

The mechanism of injury, that is a heavy object falling on his back, is particularly consistent with a thoracic spine injury. This type of injury is far more likely to cause long-term problems than simply sleeping on a couch, riding on a bus, or slipping on a pipe. Problems with the couch and bus, in particular, are best understood as exacerbations of an underlying spinal pathology. Further, even if one wanted to assume that the Veteran injured his low back in the post-service incidents, all of these situations involve the lumbar spine. There is no evidence that can even remotely attribute his thoracic level problems to any post-service incident. The only incident that could have caused the thoracic spine problem is the heavy object falling on his back during service.

. . .

The post-service situations such as sleeping on a couch, riding on a bus, driving, slipping on ice and other minor related injuries were not nearly as significant as his in-service related injuries and, at best, posed for some exacerbation of his longstanding preexisting in-service related conditions.

Furthermore, the post-service incidents reflect basically and almost entirely to the lumbar spine with no other evidence to suggest an alternative etiology for the thoracic spine.

Furthermore, the post-service incidents occurred well after the in-service related injuries for which he had continuing ongoing complaints for many, many years prior, and while stated before may have posed for some exacerbation of his longstanding condition, it is less likely than not that these post-service incidents are the cause of his current lumbar thoracic problems.

. . .

As stated before, the [VA] examiners were not in agreement with the service injuries as being the cause of his problems, the fact that they did not consider the journal entries (it is paramount to have full disclosure and to consider all of the evidence) cannot be considered a valid assessment or opinion.

To the extent that [one of the VA examiners] attempted to attribute [the Veteran's] problems to age is erroneous. First in this case [the Veteran] began complaining about problems in the early 1990s before he was even 30 years of age. In the absence of trauma, there is no support for the proposition that age alone results in degenerative arthritis before the age of 30. Also, just because many people [the Veteran's] age also have problems does not mean that these 'other people' also did not suffer previous spinal trauma. [That VA examiner's] rationale is flawed.

. . .

In conclusion, following injury there are a number of complex biomechanical and biochemical factors contributing to the development of osteoarthritic changes after trauma. The degenerative changes take time to develop and become fully manifest. The role of mechanical loading also contributes to the progression of posttraumatic arthritis.

Accordingly, the in-service low back injury, as likely as not, caused structural, biomechanical and biochemical changes, which would likely be imperceptible at a typical separation exam that contributed to the later development of [the Veteran's] degenerative condition.

Furthermore, from my experience from being a resident in training in General Surgery, Trauma, Orthopaedic Surgery and practicing orthopaedic surgery now for 40 years, I opine that [the Veteran's] service-related injuries, specifically with regards to his low back and his right hand and, secondarily, his post-physical injuries, major depressive disorders, are permanent in nature posing for functional limitation and restrictions of his body parts and activities of his lifestyle, both vocational and avocational. 

Therefore, overall, in conclusion, for the reasons sustained above, and having reviewed extensively all of the medical records and all of the information provided to me, I feel that [the Veteran's] thoracic and lumbar back pain is 'as likely as not' related to his service-related injuries, not only occurring in 1984, but his repetitive trauma during his in-service years, and not to the post-service incidents.

A review of the reports of Drs. B., M., S., and D. reveal that all of the above-referenced opinions assume the accuracy of the Veteran's statements regarding the alleged in-service injury and the authenticity of the purported office journal entry. As the Board has found that the Veteran's statements regarding the alleged in-service injury lack credibility, the Board assigns no probative value to the above-referenced opinions. Moreover, many of the above-referenced opinions also contain numerous other factual inaccuracies. See Reonal v. Brown, 5 Vet. App. at 460-61. 

The May 2010 report from Dr. B. refers to an October 1983 service treatment record showing a complaint of low back pain. However, the Veteran himself asserts that the injury occurred over a year later, in December 1984. Moreover, that October 1983 service treatment record shows that the Veteran complained of stomach problems, congestion, sore throat, nausea, chills, loose stool, and some diffuse aches in the stomach and low back. The assessment was upper respiratory infection and early flu-like symptoms. There is no indication from that record that the Veteran complained of lower back pain related to an injury. Thus, to the extent that Dr. B. asserted that the October 1983 service treatment records somehow corroborates the Veteran's version of events, such assertion is not supported by the evidence of record. Additionally, in the January 2011 addendum, Dr. B. referred to the alleged journal entry and stated that the Veteran's in-service "injury has been clearly reported in [the Veteran's] medical record and corroborates his back injury[,] and there should be no reason to doubt the veracity of the medical records which clearly document [the Veteran's] in-service injury." However, the purported office journal entry is not a medical record. Thus, Dr. B's assertion that the Veteran's medical records clearly document the alleged in-service injury is likewise not supported by the evidence of record.

In the report dated October 2010, Dr. M. indicated that the Veteran sustained the alleged injury in 1982, and that he reported back pain during military examinations conducted in 1983 and 1984. However, the alleged injury did not occur until December 1984. Thus, any documentation of back pain that occurred prior to the alleged injury would not support the Veteran's version of events. Moreover, there are no records showing complaints of back during 1983 and 1984 military examinations. Additionally, Dr. M. indicated that "[s]ubsequent to this injury, the [Veteran] began to report chronic back complaints," and the Veteran "appears to have a chronological record of pain complaints showing a progressive nature and from several sources dating back to his original injury in 1982." Contrary to Dr. M.'s assertions, there is no chronological record of pain complaints dating back to an alleged in-service injury. The Board notes that Dr. M. is one of the Veteran's treating VA physicians. A review of Dr. M.'s treatment records reveals that in February 2010, the Veteran reported chronic back pain dating back to service. In September 2010, the Veteran told Dr. M. that he sustained an acute injury during service when a heavy took fell on his back. Subsequently, he reported intermittent back pain and a current diagnosis of thoracic and lumbar spondylosis and disc disease. Dr. M. noted that per the Veteran's request, he would submit a letter to VA in support of the Veteran's service connection claim. There is no indication in the record that the Veteran ever told Dr. M. that he never sought post-service treatment for back pain relating to the alleged in-service injury or that he received extensive treatment for two post-service back injuries. Thus, Dr. M.'s opinion and treatment records appear to be based entirely on the Veteran's statements, which the Board has found lack credibility. See LaShore v. Brown, 8 Vet App 406 (1995) (holding that a lay history is not transformed into competent evidence merely because it was transcribed by a medical professional). 

Dr. S. indicated that the Veteran reported a history of back pain since a 1982 injury and that "military and civilian medical records document evaluation and treatment provided during this time and addressing this complaint." Again, there are no medical records documenting the Veteran's alleged in-service injury or any subsequent treatment. During the December 2008 Board hearing, the Veteran testified that he recalled some back problems in 1988, but admitted that he never sought treatment. Thus, Dr. S's assertion that medical records document treatment during the time of the Veteran's alleged injury are not supported by the evidence of record. See Reonal, 5 Vet. App. at 460-61 (holding that medical opinions based on an inaccurate factual premise are not probative). 

Finally, Dr. D. indicated that the Veteran's in-service injury "has been well documented throughout the course of many years." However, there is no documentation of an in-service injury prior to the Veteran filing his service connection claim in 2005. Indeed, the Veteran himself admits that he "forgot" about the in-service injury until 2005. Dr. D. also indicated that "the post-service incidents occurred well after the in-service related injuries for which he had continuing ongoing complaints for many, many years prior." Again, there is no evidence of "continuing ongoing complaints for many, many years" of back pain related to the alleged in-service injury. Additionally, Dr. D. opined that the Veteran's "service-related injuries, specifically with regards to his low back and his right hand and, secondarily, his post-physical injuries, major depressive disorders, are permanent in nature." As there are no service connection claims for a right hand disorder or major depressive disorder, it not clear what Dr. D. is referring to, and it appears that the Veteran may have been confused with someone else. This calls into question the entirety of Dr. D's opinion, further diminishing its probative value.

The Veteran underwent VA examinations in October 1010 and June 2014, with supplemental opinions issued in August 2012, August 2014, and January 2015.

During the October 2010 VA examination, the Veteran reported that around 1983 or 1984, while working as a jet engine mechanic, a hydraulic tool/engine separator tool, weighing approximately 60 pounds, fell in his mid to lower back while he was on all fours. The Veteran reported being taken by ambulance to the hospital at MacDill Air Force Base, where he was evaluated and admitted overnight. He stated that he was not told that he sustained a spinal fracture. The Veteran denied any other spinal injuries or trauma during service. After reviewing the Veteran's medical records and conducting a physical evaluation, the examiner provided a diagnosis of thoracic and lumbar spondylosis. The examiner opined that the Veteran's mid and lower back condition was not caused by or a result of an in-service event or injury. In support of this, the examiner provided the following rationale:

There does not exist in the Veteran's [claims] file sufficient evidence to support a nexus between the Veteran's reported spinal injury during active military service and the Veteran's spinal condition of thoracic and lumbar spondylosis. 

This examiner was unable to identify [service medical records] documenting the evaluation/management and overnight admission of the Veteran for evaluation /management of spinal pain immediately following the Veteran's spinal injury.

Today's physical examination does not provide sufficient objective evidence of a spinal condition resulting from the spinal injury sustained by the Veteran during his active military service.

The imaging studies of the Veteran's thoracic and lumbar spine are reported to reveal degenerative changes that are also reported on imaging studies of individuals within the Veteran's age group not reporting spinal symptoms. Objective evidence of neurocompressive pathology is not present on physical examination although implied by the radiologist's reports of the Veteran's imaging studies. As such, the imaging studies are non-concordant with the Veteran's spinal condition.

In August 2012, another VA examiner opined that the Veteran's thoracolumbar spine disorder was less likely than not incurred in or caused by the claimed in-service injury. In support of this, the examiner provided the following rationale:

I have reviewed [the claims] file, [service treatment records], imaging, treating and VA physician records/correspondences and attorney correspondence. I find no service records that indicate an injury occurred and cause this Veteran's degenerative spine condition. Furthermore, many individuals of similar age to this Veteran have degenerative changes about the spine. [The] Veteran's story of injury, hospital stay, and release with conservative treatment is not consistent with a significant spinal injury that would have led to thoracolumbar degenerative changes.

In September 2012, the August 2012 VA examiner provided the following addendum to the above-referenced opinion:

Furthermore, it is likely that falls with associated back pain in 1992 and 1994 may be responsible for this Veteran's back pain and are at least as likely a cause of this Veteran's back pain.

During a June 2014 VA examination, the Veteran reported injuring his back when a tool fell on him while he was working on an aircraft engine. The Veteran reported being treated at the hospital and discharged. He reported continuing back pain and stiffness after discharge. After a physical evaluation, the examiner provided a diagnosis of degenerative arthritis of the lumbar spine. The examiner noted that there were no hospital records of the alleged in-service back injury and was unable to provide an opinion as to the etiology of the Veteran's lumbar spine disorder without resorting to mere speculation, as there was insufficient evidence to render an opinion. 

In August 2014, the June 2014 VA examiner indicated that the 1984 journal entry was reviewed, and the examiner provide the following addendum opinion:

I cannot resolve this issue without resorting to mere speculation because there is insufficient descriptive detail in the journal to imply a diagnosis or injury that would be related to [the Veteran's] current claim. Based on the evidence above it would be less likely than not.

In January 2015, another VA examiner reviewed the Veteran's claims file, including the 1984 journal entry and post-service treatment records regarding the Veteran's 1992 and 1994 back injuries. The examiner opined that the Veteran's current lumbar spine disorder is less likely than not caused by or a result of an in-service event documented in the 1984 journal entry and more likely to have arisen form the later post-service injuries in 1992 and 1994. In support of this, the examiner provided, in relevant part, the following rationale:

1. The Veteran's service records do not support that [the Veteran] developed a medical condition that was chronic in nature and related to the claimed issue.

. . .

The Veteran's journal entry did mention that he did some pulling. Also he fell on his back and went to the hospital. The date of this event was sometime in 1984. However, there was no mention made that the Veteran had sustained injuries from this event which affected his ability to perform his military duties especially requiring an operative procedure, hospitalization, change of military specialties, or discharge from the service. . . . According to the Article "Does Minor Trauma Cause Serious Low Back Illness from Spine, Volume 31, Number 25 pp 2942-2949, it concludes that 'among persons with known risk factors for degenerative lumbar disc disease but with no history of serious lower back pain, minor trauma does not appear to increase the risk of serious low back pain episodes or disability. 

Minor back trauma would include that of traffic accidents at greater than 30 [miles per hour], falls from heights greater than three feet, and lifting injury with awkward posture and greater than 60 [pounds]. It does not include those situations that resulted in fractures, vertebral dislocations, neurological impairment, disc herniation of the vertebral column.

Commentary: The type of injury that the Veteran sustained in the service would fit the criteria for minor trauma based on the information and the clinical course of the Veteran. Therefore by this article it would not have contributed to the current low back condition.

This line of reasoning is further validated by the later objective imaging studies taken of the Veteran's lumbar spine.

2. The Veteran's post service clinical course does not demonstrate a relationship between the in service event and the more recent back conditions.

. . .
[F]or nearly ten years after the alleged incident in 1984 the[re] were no demonstrable changes of the lumbar spine. Had the inciting incident been of significance when it occurred in the service, there would have been changes demonstrable by August, 1994. However, this was not the case. . . . The MRI report of the lumbar spine dated 9/24/98 reported changes consistent with a mild central disc bulge at the L5/S1 level with no disc protrusion and no foraminal encroachment seen. Otherwise the MRI of the lumbar spine was remarkable.

Commentary: Again this report demonstrates that some fourteen years after the 1984 incident no significant changed had occurred to the lumbar spine indicative of a traumatic event arising from the military service. Rather they are features expected of routine wear and tear process arising from aging. 

3. An Alternative explanation does exist for the development of the currently claimed medical condition:

Discussion/Medical Literature Consensus: Degenerative disc disease and degenerative joint disease results from progressive degeneration due to aging, chronic weight bearing, trauma, or other factors. It can lead to disc protrusion and/or loss of disc height with attendant loading of the posterior elements of the spine, including the facet joints. Problems with localized back pain, spinal nerve impingement, or herniated discs may occur. . . . Therefore it is more likely that the post service injuries would have led to the Veteran's present lumbar spine condition as opposed to the minor event in the service so many years earlier.

4. The private sector medical provider's response(s)/opinions do not have a substantive nature for the Veteran's claimed conditions.

Commentary: The information provided by the medical providers does not take into account or discuss the medical literature and objective findings. Both of these instances do not validate their differing opinions. As such they would be an unsupported rationale. 

In summary, the Board does not find the Veteran's statements and the purported journal entry to be credible evidence of an in-service injury. Therefore, the Veteran's testimony and the journal entry evidence are assigned no probative value in this regard. All of the opinions submitted by the Veteran contain factual inaccuracies and rely on the Veteran's statements regarding the alleged in-service injury and the purported journal entry, which the Board has found lack credibility. Accordingly, the Board assigns them no probative value. In this, and in other cases, the Board may not base a decision on its own unsubstantiated medical conclusions. Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991). As there is no credible evidence of an in-service injury and no probative evidence otherwise linking a current thoracolumbar spine disorder to the Veteran's active duty, service connection for a thoracolumbar spine disorder is not warranted. In reaching this decision, the Board considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against the Veteran's claim for service connection for a thoracolumbar spine disorder, the doctrine is not for application. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Entitlement to service connection for a thoracolumbar spine disorder is denied.



____________________________________________
L. M. BARNARD
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs